GEORGE N. PIERCE COMPANY *vs.* ALBERT M. BEERS.

Suffolk.    December 12, 1905. — January 4, 1906.

Present. KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Practice, Civil.    Agency.    Damages.    Waiver.*

Where in an action of contract the defendant does not demur to the declaration but proceeds in a hearing before an auditor until all the evidence has been put in before objecting that the declaration sets forth no cause of action, he has waived that objection, and, if facts have been proved sufficient to establish a cause of action, it is too late for him to ask for such a ruling at the trial.

If one of the salesmen employed in a wholesale and retail store of a manufacturer makes retail sales to himself at a lower price than that authorized by his employer under the false pretence that the sales are made to a wholesale agent of his employer, he is liable to his employer for the difference between the price received by the employer and the retail market value of the goods at the time of each sale.

In an action by a manufacturer against one of its salesmen for wrongfully making sales to himself at a lower price than that authorized by the plaintiff under the false pretence that the sales were made to a wholesale agent of the plaintiff, it is no defence that the defendant made the sales outside his working hours.

There can be no waiver without knowledge of the thing waived.

CONTRACT, with counts in tort, by a corporation manufacturing bicycles against one of its salesmen.    Writ dated June 8, 1898.

The declaration was as follows :

First count :  On or about the fifteenth day of December, 1896, the plaintiff and the defendant entered into a contract whereby, in consideration that the plaintiff would employ the defendant as a salesman for the goods manufactured and sold by the plaintiff, the defendant agreed with the plaintiff to enter such employment and to serve the plaintiff faithfully therein, and to sell the goods of the plaintiff at such prices and on such terms and conditions as the plaintiff should prescribe.    And thereafter the defendant entered the employ of the plaintiff and sold for the plaintiff divers bicycles manufactured by the plaintiff, and it became the duty of the defendant in accordance with his promise to sell the bicycles at the prices established by the plaintiff, but the defendant, disregarding his promise, from time to time,

and at divers times from the fifteenth day of December, 1896, to the date of the writ, sold sundry bicycles at prices less than the prices at which the defendant was instructed and was authorized to sell the bicycles ; and by the several breaches of the contract by the defendant the plaintiff has suffered damage.

Second count : The plaintiff is a corporation engaged in the business of manufacturing and selling bicycles and goods and merchandise pertaining to bicycles, and on or about the fifteenth day of December, 1896, the defendant entered the employ of the plaintiff as a salesman and it thereupon became the duty of the defendant to serve the plaintiff faithfully, and among other things to sell the bicycles and other goods of the plaintiff at such prices as the plaintiff should from time to time prescribe and to account for and pay to the plaintiff the sums of money received from such sales.    The plaintiff duly instructed the defendant to sell the bicycles at certain retail prices, and thereupon it became incumbent upon the defendant to sell the bicycles at such prices, but the defendant, disregarding his duty to the plaintiff, from time to time and at divers times from the fifteenth day of December, 1896, to the date of the writ, fraudulently and with desire to appropriate to himself moneys obtained from the sale of the bicycles, sold from time to time divers bicycles at prices less than the prices prescribed by the plaintiff, and did not account and pay over to the plaintiff the retail prices thereof; wherefore by the several wrongful acts of the defendant the plaintiff has been greatly damaged.

Third count: And the defendant has converted to his own use sundry bicycles, the property of the plaintiff mentioned in the schedule hereto annexed.

Fourth count : And the defendant owes the plaintiff the sum of $1,494.20, money had and received by the defendant for the plaintiff's use, according to the bill of particulars hereto annexed, together with interest on the several items.

Fifth count: The defendant owes the plaintiff the amount of $1,494.20, according to the account annexed, together with interest on the several items thereof.

The defendant's answer was a general denial.    The case was referred to an auditor, who under the first and second counts found in favor of the plaintiff in the sum of $1,441.91, with

interest from the date of the writ. In the Superior Court the case was tried before *Wait*, J. It appeared that the plaintiff during the period covered by the declaration was a manufacturer of bicycles having a store at Boston in charge of a manager named Cannon. At this store bicycles were sold both at wholesale and at retail. The sales at retail were ordinary sales of single wheels. The sales at wholesale were to persons designated as sub-agents who were in fact bicycle dealers having places of business in adjoining cities and towns. The plaintiff appointed as sub-agents only persons who would agree to purchase a certain number of bicycles from the plaintiff. The wholesale prices were considerably lower than the retail prices, and all prices were fixed by the plaintiff, and were changed from time to time during the season. The salesmen at the store in Boston sold wheels both at wholesale and at retail at the prices established from time to time by the plaintiff. Sales to sub-agents of single bicycles were treated as wholesale transactions and the prices at which single wheels were sold to regularly appointed sub-agents were the wholesale prices.

The defendant was one of several salesmen employed by the plaintiff at its Boston store. His salary was $20 a week. By his efforts one Warren of Everett was made a regular sub-agent of the plaintiff. The defendant agreed with Warren to help Warren to sell the bicycles that Warren was obliged to purchase from the plaintiff in order to become a sub-agent, by selling wheels himself that should be turned in to the plaintiff as sales to Warren. The defendant sold bicycles at prices not less than the wholesale prices, and frequently considerably above the wholesale prices, turned in to the plaintiff's office sales slips describing the sales as sales made by the plaintiff to Warren at wholesale prices, keeping for himself all that he received above the wholesale prices. The plaintiff allowed a discount of two per cent for cash on sales to sub-agents, and this two per cent discount was in every case retained by the defendant. The defendant hired a postoffice box at Everett in Warren's name, paid for it himself, had the only key to the box, and directed the plaintiff to send Warren's bills to this box, where the defendant obtained them.

The plaintiff knew nothing of the arrangement between War-

ren and the defendant before the date of the writ, and supposed that the sales turned in by the defendant as sales of the plaintiff to Warren were actual sales to Warren. Warren himself sold a few wheels, fifteen or twenty.

The defendant asked the judge to rule :

1. That the first count of the declaration does not set out any legal cause of action against the defendant.

2. That the second count of the declaration does not set out any legal cause of action against the defendant.

3. That as to each the first and second counts, there is not sufficient evidence to warrant a finding thereon for the plaintiff.

4. That as to each the first and second counts, there is not sufficient evidence to warrant a finding for more than nominal damages.

5. That, upon the evidence, the relation between the plaintiff and the defendant was that of master and servant.

6. That, if the relation between the plaintiff and the defendant was that of master and servant, the defendant owed no duty to the plaintiff outside of the hours of his employment.

7. That if the jury find that the defendant was buying and selling on his own account in the name of Warren, and that this business was carried on by him in his own time, and not during the hours the plaintiff was entitled to his services, no breach of his contract of employment with the plaintiff would be thereby committed.

8. That to entitle the plaintiff to recover against the defendant, it must appear that the sales made by the defendant were made during the hours of his employment with the plaintiff.

9. That if the defendant, without the knowledge of the plaintiff, was the purchaser, in the name of Warren, from the plaintiff, of the bicycles in question, no right of action would thereby accrue to the plaintiff except upon the rescission of the several contracts of purchase.

10. That if the jury find that the plaintiff believed it was selling the several bicycles mentioned in the declaration to Warren, and intended to part with the property therein at the prices at which the respective bicycles were charged to Warren, and it appeared that the defendant without the knowledge of the plaintiff was the actual purchaser in the name of Warren, the

plaintiff would not thereby suffer any pecuniary damage for which the defendant would be liable.

11. That if the plaintiff has any remedy against the defendant, it must be set out or declared for by a special count upon each transaction.

The judge refused these requests for rulings, except that he ruled in accordance with the fifth request that the relation between the plaintiff and the defendant was that of master and servant, and the defendant excepted.

At the request of the plaintiff the judge ruled:

1. The plaintiff is entitled to recover the difference between the net retail market price on each bicycle described in the account annexed to the declaration which was sold by the defendant without the authority of the plaintiff and the amount paid to the plaintiff by the defendant therefor.

2. The fact, if it be a fact, that certain persons bought bicycles from the defendant, who would not have bought Pierce wheels at the regular retail prices, is immaterial in determining the plaintiff's damages.

3. The fact, if it be a fact, that the plaintiff or its agents approved certain sales made by the defendant, does not amount to a ratification of those sales, if the approval was given in ignorance of the facts, if they be facts, that the defendant made the sales in question without the authority of the plaintiff.

4. The market values of single new Pierce bicycles in Boston during the years 1897 and 1898 were the prices, if any, at which such bicycles were commonly sold singly at Boston or its vicinity, during the years 1897 and 1898.

To each of these rulings the defendant excepted.

After these rulings and refusals to rule, the defendant's counsel said he saw no question for the jury, and the judge ordered a verdict for the plaintiff upon the first and second counts of the declaration for the net retail market price on each bicycle described in the account annexed to the declaration which was sold by the defendant without the authority of the plaintiff less the amount paid to the plaintiff by the defendant therefor with interest from the date of the writ, which sum by agreement of the parties was fixed at the amount found by the auditor, namely, $1,966.75.

The defendant alleged exceptions.

*W. C. Cogswell*, for the defendant.

*J. B. Studley*, for the plaintiff.

SHELDON, J. The defendant's answer to the plaintiff's declaration was a general denial. The case was referred to an auditor, who heard evidence offered by both parties and made a report. At the trial in the Superior Court, after the pleadings were read, the defendant asked the judge to rule that neither the first nor the second count of the declaration set out any cause of action against the defendant or assigned any breach by him of any contract; and the first question that comes before us is raised by the defendant's exception to the refusal of the judge so to rule. The auditor states in his report that the defendant made these objections before him, but only after all the evidence was put in.

The defendant now makes certain specific objections to the sufficiency of the averments of these counts, which might call for attention if they had been taken by a demurrer setting them out, though we do not mean to intimate that such a demurrer, if made, would have been sustained. But we think that he had waived these objections by going to trial without raising them on the record. *Preston* v. *Neale*, 12 Gray, 222. It is well settled that such objections should be taken by demurrer; and where this has not been done, it is sufficient if there are facts enough proved at the trial to establish a cause of action which has been defectively stated in the declaration. *Foster* v. *Leach*, 160 Mass. 418. *Downs* v. *Hawley*, 112 Mass. 237. *Shattuck* v. *Marcus*, 182 Mass. 572. The defendant's exceptions to the refusal to give the first, second and eleventh instructions asked for by him must be overruled.

The defendant also argues that there was not sufficient evidence to warrant a finding for the plaintiff on the first and second counts upon which the verdict for the plaintiff was rendered. But we think that the facts found by the auditor sufficiently show a breach of the duty owed by the defendant to the plaintiff as his employer; and it was correctly ruled that the measure of damages under these counts was the difference between the price received for each item by the plaintiff and the market value of the wheel at Boston at the time of sale ; and

the finding that the net retail price represented that market value was one which the auditor was warranted in making as between these parties.    Nor can it be said that the successive wrongful sales made by the defendant were respectively waived by the plaintiff by continuing to employ him, as the defendant contends, relying on *Forbes* v. *Appleyard*, 181 Mass. 354; for the auditor has found that these transactions of the defendant were unknown to the plaintiff, and that he was discharged as soon as they were discovered.    The real fact, as found by the auditor, is that the defendant wrongfully made all these sales to himself at a smaller price than that for which he was allowed to make them, under the false pretence that they were really made to a wholesale agent of the plaintiff, and thereby procured and induced the plaintiff to receive in payment the smaller prices for which it would have sold them to the wholesale agent if he had been really the purchaser.    It would be a reproach to the law if it could afford no remedy for such misconduct.    The case comes within the rule that an agent to sell cannot himself purchase.    *Goodell* v. *Goodell*, 173 Mass. 140, 146.    *Commonwealth* v. *Cooper*, 130 Mass. 285.    *Smith* v. *Townsend*, 109 Mass. 500, 502.    *Farnsworth* v. *Hemmer*, 1 Allen, 494.    *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 198, 203.    This is especially true where the agent undertakes to make more advantageous terms for his own benefit by pretending that the sale is really made to one to whom the seller is willing, for special reasons, to give those terms.    And as to the measure of damages there was nothing to control the auditor's finding.    The defendant's exceptions to the refusal to give the third, fourth, ninth and tenth instructions asked for by him must be overruled.

Nor can it make any difference that some of the sales in question were made by the defendant outside his working hours. The sales were none the less sales made in reality to himself instead of being made to others, and none the less made under the false pretence which we have stated and for a smaller price than that for which he had the right to make them.    His liability for this actual misfeasance does not depend upon the time or place of the misfeasance.    It operated as an obtaining of the plaintiff's goods by means of false pretences at a less price than he was entitled to obtain them.    The fact that one is employed

by a merchant to render services during business hours cannot give him any license to defraud his employer in the evenings or on holidays. Accordingly his sixth, seventh and eighth requests for rulings were rightly refused.

His fifth request was given.

It follows from what we already have said that the rulings made at the request of the plaintiff were made properly; and as the defendant, upon the rulings made and refused, did not desire to go to the jury, he cannot complain of the action of the judge in ordering a verdict for the amount found by the auditor in favor of the plaintiff upon the first and second counts.

*Exceptions overruled.*