George Arthur MEHUS, Morris Mehus, Evelyn Holdahl, Raymo Mehus, Hazel Satrom, and Amy Thompson, Individually, and as Heirs of the Estate of Artha Mehus, Deceased, Plaintiffs and Appellants,

v.

Nina THOMPSON, Sammy Thompson, Federal Land Bank of St. Paul, a corporation, and the Federal Land Bank Association of Valley City, North Dakota, a corporation, Defendants and Appellees.

Civ. No. 9436.

Supreme Court of North Dakota.

May 17, 1978.

Rehearing Denied June 30, 1978.

John T. Paulson, Valley City, for appellants.

Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for appellees, Nina Thompson and Sammy Thompson; argued by Robert Vaaler, Grand Forks.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for appellee banks, argued by Mart R. Vogel, Fargo.

PEDERSON, Justice.

This is an appeal from a judgment of the district court holding that a warranty deed from Artha Mehus to Nina Thompson was, in all respects, proper and valid and operated to convey a fee simple title to 260 acres of farmland in Steele County. The appeal is also from an order denying a motion for a new trial. We affirm the judgment and the order.

Artha Mehus was the mother of the plaintiffs (hereinafter identified as the Mehus heirs) and of the defendant Nina Thompson. She amassed considerable property during her lifetime. Artha Mehus had been an extremely diligent, capable woman, with excellent business sense and judgment. She was described as a demanding woman with a very dominant personality. Both Artha Mehus and her daughter, Nina Thompson, lived at Hatton, North Dakota.

From 1945 until shortly before the death of Artha Mehus, Nina Thompson assisted her mother in many and varied business affairs and, particularly in later years, in many housekeeping and personal affairs as well. By 1968, Artha Mehus' health restricted her to her home and largely confined her to bed. While most, if not all, of Artha Mehus' children assisted her in her personal and business affairs, the great bulk of these labors were performed by Nina Thompson.

In March or April of 1968, Nina Thompson obtained for her mother a blank deed form. Mrs. Mehus held the form for a number of weeks, until June 21, 1968, when she executed the deed and clipped thereto a slip of paper upon which she had written the description of the 260-acre tract in Steele County. Artha Mehus instructed Nina Thompson to take the deed to Mr. Gene Grindeland, a Mayville attorney, and to ask him to insert in the blank deed the description of property from the attached paper, and to name Nina Thompson as the grantee. Nina Thompson took the papers to Mr. Grindeland, who completed the deed in accordance with the instructions of Artha Mehus, acknowledged the signature of Artha Mehus, and caused the deed to be re-corded in the office of the Register of Deeds of Steele County. Grindeland was familiar with Artha Mehus' signature. On April 7, 1971, Nina Thompson and Sammy Thompson, her husband, mortgaged the property to secure a loan from the defendant, Federal Land Bank of St. Paul.

In 1966 Artha Mehus had executed a power of attorney, naming Nina Thompson as her attorney-in-fact. In 1969, several months after the deed had been executed and recorded, the power of attorney was revoked and two of the Mehus heirs were named as attorneys-in-fact for Artha Mehus. She died on June 21, 1970, approximately two years after the deed to Nina Thompson.

As early as 1969, the Mehus heirs, or some of them, discussed among themselves the bringing of an action to set aside the conveyance and consulted attorneys on at least two occasions to discuss this matter. Prior to the death of their mother, they urged Mrs. Mehus to institute an action against Nina Thompson to have the deed set aside. Two of Artha Mehus' sons arranged to have an attorney call upon her for the purpose of discussing an action to set aside the deed to Nina Thompson. Artha Mehus never authorized the institution of an action to set aside the deed during her lifetime and none was brought. The Red River National Bank & Trust Company, as the administrator or personal representative of the estate of Artha Mehus, has not commenced or maintained an action on behalf of the estate to set aside the deed.

This suit, alleging undue influence on the part of Nina Thompson, was commenced on June 19, 1974, approximately six years after the execution and recording of the deed. After trial without a jury, the court concluded (1) that there was no evidence to support the Mehus heirs claim that Nina Thompson dominated Artha Mehus or exercised or practiced undue influence upon Artha Mehus in any way or at any time; (2) that the deed from Artha Mehus to Nina Thompson conveying the 260 acres was in all respects proper and valid and operated to convey fee simple title to Nina Thomp-

son; (3) that the mortgage given by Nina and Sammy Thompson to the defendant, Federal Land Bank of St. Paul, covering the 260 acres, was in all respects proper and valid and was a valid lien upon the property of Nina Thompson; (4) that the Mehus heirs were guilty of laches in the maintenance of the suit; and (5) that the defendants are entitled to judgment.

The Mehus heirs raise numerous issues wherein they contend the trial court erred in its failure to admit certain testimony and documents into evidence and that the trial court erred in several determinations of law, all to the prejudice of the Mehus heirs.

## I.

## ISSUES OF EVIDENCE

During the course of trial, the Mehus heirs attempted to elicit the testimony of Roger Kringlie and Raymond Rund, both attorneys at law who had performed services for Artha Mehus during her lifetime. The trial court refused to allow the testimony of either attorney. The testimony of Attorney Kringlie was refused because the trial court found it irrelevant and because of the attorney-client privilege which was found to exist between Artha Mehus and Attorney Kringlie. The testimony of Attorney Rund was refused because of the attorney-client privilege.

■ We hold that the refusal of the trial court to hear the testimony of Attorney Kringlie was proper. In his offer of proof, the attorney for the Mehus heirs stated that Attorney Kringlie would testify to a scheme or plan of the decedent with respect to distribution of her property. At this point the trial court sustained an objection on the basis of irrelevance. The test as to whether evidence is relevant or irrelevant is whether it would reasonably and actually tend to prove or disprove any mat-

ter of fact in issue. *Beck v. Lind,* 235 N.W.2d 239 (N.D.1975). Attorney Kringlie's testimony could only indicate that Artha Mehus had considered a plan for disposing of her property. If that plan were not followed, it would only serve to show that Artha Mehus had changed her mind and would be no indication as to why she had changed her mind.

■ The testimony of Attorney Rund was excluded solely because of the attorney-client privilege. Rund exercised the privilege himself, on behalf of his client, Artha Mehus. While it is true that there is a general rule that confidential communications between an attorney and his client are privileged, this rule is not without exceptions. One of the exceptions was adopted by this Court in the case of *In re Graf's Estate,* 119 N.W.2d 478, 481 (N.D.1963). There, this Court explained that some "communications lose their confidential character after the death of the client and that such communications can be shown in litigation between parties, all of whom claim under the client. . . . The courts which adopt this view do so on the theory that, in a controversy not adverse to the estate, between heirs at law, next of kin, devisees, legatees and personal representatives, the claim that the communication was privileged cannot be heard. In such case, the interest of the deceased as well as that of the estate is that the truth be ascertained." *In re Graf's Estate, supra,* at 481.[1] In this case all the parties are children of Artha Mehus, or claim through children of Artha Mehus. We hold that the rule of *In re Graf's Estate* should have been applied and that the trial court erred in refusing to hear the testimony of Attorney Rund.

■ Though we have held that it was error to exclude the testimony of Attorney

1. In *In re Graf's Estate,* the Court cited, as supporting the rule: *Winters v. Winters,* 102 Iowa 53, 71 N.W. 184 (1897); *Paley v. Superior Court,* 137 Cal.App.2d 450, 290 P.2d 617 (1955); *Bergsvik v. Bergsvik,* 205 Or. 670, 291 P.2d 724 (1955); *In re Brzowsky's Estate,* 267 Wis. 510, 66 N.W.2d 145 (1954). Trial, in the instant case, was had prior to the effective date of North Dakota Rules of Evidence—Feb. 15, 1977. Therefore the supersession of the "Dead Man's" statute, found at § 31–01–03, NDCC, has not entered into our deliberations. See Rule 601, NDREv, and comment thereto.

Rund because of the attorney-client privilege, we also hold that the error was not prejudicial. Rund's testimony should not have been excluded by the attorney-client privilege, but his testimony is, nonetheless, subject to the Rules of Evidence. In order to preserve evidence for appeal, counsel for the Mehus heirs made the following offer of proof:

"MR. PAULSON: If Mr. Rund were allowed to testify, he would testify that on or about the 20th day of February, 1969 and for a one or two times prior thereto he met with the decedent, Artha Mehus, concerning two subjects.

"One, the subject of revoking Nina's power of attorney which is referred to in plaintiffs' exhibit No. 1, or which is referred to as plaintiffs' exhibit 1;

"That he conferred with her concerning a purported gift of 280 [sic] acres of land, namely that land, described in plaintiffs' exhibit No. 2.

"That as a result of those conversations and conferences he prepared the revocation of the power of attorney and he prepared the affidavit that those conversations would reveal that the decedent made a claim that she never gave this property or never intended to give this property to her daughter, Nina Thompson.

"And further, that she had told her, all of her other children that she had never intended nor never gave this property to Nina Thompson which is the subject of plaintiffs' exhibit No. 2.

"And that further that she told Mr. Rund during this time period, during the conversations that she was slapped by her daughter, Nina Thompson, concerning conversations over this land and that she feared that when the information of the affidavit got out that her daughter would continue to slap her or abuse her."

Mr. Rund's testimony, additionally, was to lay a foundation for the admission of two documents, the formal revocation of Nina Thompson's power of attorney and the formal affidavit of Artha Mehus. The Federal Land Bank and Nina Thompson objected to the offer of proof on the grounds of hearsay and immateriality and, also, on the ground that Artha Mehus, during the conferences with Attorney Rund, spoke in Norwegian, which language was translated into English by a party plaintiff. The trial court sustained the objections generally. We think the objections, under the circumstances, were properly sustained.

The affidavit of Artha Mehus is the statement of a deceased declarant by which the Mehus heirs sought to prove the contents of the statement. It is classic hearsay. As such, it must be excluded unless it comes within one of the recognized exceptions to the hearsay rule. We know of no fitting exception and the Mehus heirs have offered none.

The general rule in this regard is "statements of a grantor made after the delivery of a deed are admissible in a suit to enforce title thereunder when such statements support the deed but not when they are against it." *Silbernagel v. Silbernagel,* 79 N.D. 275, 283, 55 N.W.2d 713, 717 (1952); *Arnegaard v. Arnegaard,* 7 N.D. 475, 75 N.W. 797 (1898). The Mehus heirs protest that this rule is unfair. The rule is an ancient and well-considered one.[2] "Statements supporting the deed are adverse to any interest of grantor in the land and *constitute an admission against grantor's interest.*[3] Statements adverse to the deed are self-serving declarations." *Silbernagel v. Silbernagel,* 55 N.W.2d at 717, 718, *supra.* [Emphasis added.]

We additionally note that there is no evidence of any slapping or other abuse of Artha Mehus by Nina Thompson, nor of any fear of Nina on the part of Artha. As the trial court noted, the conver-

---

2. *McDonald v. Miller,* 73 N.D. 474, 16 N.W.2d 270 (1944), outlines the rule and is the subject of an annotation found at 156 A.L.R. 1335.

3. Technically, statements supporting the deed are statements against interest (See, for present rule, Rule 804(b)(3), NDREv) and not admissions (See Rule 801(d)(2), NDREv), unless the declarant is a party.

sations between Rund and Artha Mehus occurred several months after the deed was completed. The Mehus heirs, at trial, argued that the affidavit should have been admitted as an exception to the hearsay rule to show her (Artha Mehus') state of mind and her intent at the time of making the affidavit. This assertion misses the mark. The trial court was concerned not with her state of mind when she made the affidavit, but when she made the deed. Artha Mehus' later state of mind, or her intentions after months of reconsideration, are immaterial. Likewise, a revocation of a power of attorney is not material to a consideration of Artha Mehus' intentions months earlier when she made the deed.

## II.

▮ Is a deed form, delivered blank except for the signature of the grantor, with an attached description of land (later typed on the deed) and verbal instructions to the grantor's daughter to insert her own name as grantee, absolutely void? We hold that it is not. In *Brugman v. Charlson,* 44 N.D. 114, 171 N.W. 882, 883 (1919), we said:

"On its face, the deed delivered to the plaintiff with the name of the grantee therein blank, *with no proper authorization shown to fill in the name of the grantee,* was void, and conveyed no title." [Cites omitted.] [Emphasis added.]

A different rule obtains where there is authority to insert the name of a grantee.

". . . the blank space for the name of the grantee in the deed may be filled in during the lifetime of the grantors under his parol authority, and when so filled in the deed is a legal conveyance." *Gajewski v. Bratcher,* 221 N.W.2d 614, 638 (N.D.1974), citing *Johnson v. Rost,* 164 Minn. 154, 204 N.W. 642 (1925).

The Mehus heirs argue that that deed was additionally blank in that no description of land appeared on the form when Artha Mehus signed her name as grantee. The evidence indicates that the land de-

scription was affixed to the deed form on a separate piece of paper. No evidence was offered which indicates that the typed description, which now appears on the deed, varies in any way from the description prepared by Artha Mehus' own hand. The trial court commented, in a memorandum opinion, to the following effect:

"In this case the deed was voidable if Nina Thompson or Mr. Grindeland exceeded or went contrary to the authority to fill in the blanks which had been given by Artha Mehus.

"However, the Court finds from the evidence that Mr. Grindeland did follow the instructions to the letter as given to him in this slip of paper which was attached to the deed and he did fill out the deed in accordance with the instructions of the grantor."

▮ North Dakota law prescribes no particular form to be used in a grant of real property. Section 47–10–06, NDCC, provides for a short form which may be used, but which is not required. The only absolute requirements for the grant of real property by deed are found in § 47–10–01, NDCC, which requires "an instrument in writing subscribed by the party disposing of the [real property] . . . ."[4] We hold that the transfer from Artha Mehus to Nina Thompson, as between those parties, was complete when Artha Mehus delivered the signed deed form, with an attached description of the property, to Nina Thompson and instructed that she (Nina) should insert her own name as grantee. We hold that, upon delivery, the deed was blank only as to the grantee, and that the grantee's name was properly supplied pursuant to the rule of *Gajewski v. Bratcher, supra.*

## III.

▮ While the Mehus heirs have not argued that any specific findings of the trial court are clearly erroneous, they raise two issues which we treat as assertions of

---

**4.** In *Rozan v. Rozan,* 129 N.W.2d 694 (N.D. 1964), this Court accepted as valid, without comment, certain mineral deeds shown to have

been executed completely in blank by one of the two grantors.

clear error. In our review of a trial court's finding, we determine that it "is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973); *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

(1) Did Nina Thompson exercise undue influence upon Artha Mehus in securing the deeds? We hold that she did not. The trial court found "that there is no evidence of any domination of Artha Mehus by the defendant, Nina Thompson, nor is there any evidence of any undue influence practiced by the defendant, Nina Thompson, upon her mother, Artha Mehus, which in any way caused or influenced Artha Mehus to convey the aforesaid property to her daughter, Nina Thompson, nor is there any evidence of any threats made by the defendant, Nina Thompson, to or against her mother, Artha Mehus, during her lifetime." In a memorandum opinion, the trial court said:

". . . the Court cannot find any evidence to support the contention that the said Nina Thompson used any undue influence upon her mother Artha Mehus but to the contrary treated her kindly and worked for her under extremely difficult conditions."

We have said that the existence or nonexistence of undue influence is a question of fact. *In re Estate of Elmer, supra.*

"A mere suspicion of undue influence is not sufficient . . . to sustain a verdict." *In re Estate of Wagner,* 265 N.W.2d 459 (N.D.1978).

We agree with the trial court that there is no evidence of undue influence. We must therefore conclude, with the trial court, that Artha Mehus was not subjected to undue influence. See, *Kadrmas v. Kadrmas,* 264 N.W.2d 892 (N.D.1978).

(2) Have the defendants, Thompson and Federal Land Bank, met

their burden of proof as to the transaction between Nina Thompson and Artha Mehus? The Mehus heirs correctly point to *Johnson v. Johnson,* 85 N.W.2d 211 (N.D.1957), as imposing a burden on the grantee once a confidential relationship with the grantor is established. The grantee then bears the burden of showing the following three elements: "[1] That the deed was freely and voluntarily made; [2] that . . . [the grantor] knew what he was doing when he executed the deed; and [3] that no such fraud or undue influence exists to warrant its cancellation." *Johnson v. Johnson, supra,* at 225. The trial court found specifically that the burden was met as to the element [3]. A reading of the memorandum opinion reveals that the trial court must necessarily have found that the grantee met her burden of proving elements [1] and [2] as well. Although the proof came through the testimony of the grantee, Nina Thompson, the Mehus heirs have introduced no evidence to refute her testimony.

The evidence supports the findings of the trial court. Applying Rule 52(a), NDRCiv P, as we must, we affirm those findings.

### IV.

The Mehus heirs raise several additional issues which we treat as follows:

(1) As to the defenses of statute of limitations and laches, those we do not reach because the trial court heard the case on the merits and because the appellees, Thompson and Federal Land Bank, do not urge them on appeal.

(2) As to the issue of whether the mortgage on the deeded property is voidable where the deed is set aside, this we do not reach because the deed has not been set aside.

(3) As to whether the trial court erred in not adding Gunder Mehus as an indispensable party, we conclude that there was no error. At trial, the Mehus heirs conceded that the success of their action to

set aside the deed would cause the property to revert back to the former owner and that the property would thus be brought within the control of the administrator of the estate of Artha Mehus. The naming of Gunder Mehus as a party to this suit could have no effect upon his standing as an heir to the estate of Artha Mehus.

The judgment and order of the district court are affirmed.

ERICKSTAD, C. J., VOGEL and SAND, JJ., and NORBERT J. MUGGLI, District Judge, concur.

MUGGLI, District Judge, sitting in place of PAULSON, J., disqualified.